RICHARD McKEWEN (WSBA No. 45041)
MICHAEL P. MORA (IL Bar No. 6199875)
Federal Trade Commission
915 Second Ave., Suite 2896
Seattle, WA 98174
Phone: 206-220-6350
Fax: 202-220-6366
E-mail: rmckewen@ftc.gov
mmora@ftc.gov

COUNSEL FOR PLAINTIFF
FEDERAL TRADE COMMISSION

**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
MISSOULA DIVISION**

| | |
|---|---|
| **FEDERAL TRADE COMMISSION,**<br><br>      **Plaintiff,**<br><br>– *v.* –<br><br>**AMERICAN EVOICE, LTD., et al.,**<br><br>      **Defendants,**<br><br>*and*<br><br>**BIBLIOLOGIC, LTD.,**<br><br>      **Relief Defendant.** | **CIVIL ACTION**<br><br>**NO. 9:13-CV-003-DLC**<br><br>**PLAINTIFF FTC'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO MODIFY THE STIPULATED PRELIMINARY INJUNCTION TO PERMIT ADMINISTRATION OF DEFENDANT STEVEN SANN'S CHAPTER 7 BANKRUPTCY ESTATE** |

Plaintiff Federal Trade Commission ("FTC") respectfully requests that the Court enter an Order modifying the Stipulated Preliminary Injunction against Defendants Steven Sann and Terry Lane, and Relief Defendant Bibliologic, Ltd., to permit the administration of Defendant Sann's Chapter 7 bankruptcy estate. In support of this request, Plaintiff FTC states as follows:

## I. BACKGROUND

1. On January 8, 2013, Plaintiff Federal Trade Commission ("FTC") commenced this enforcement action pursuant to Section 13(b) of the FTC Act, 15 U.S.C. § 53(b), to remedy Defendants' violations of Section 5 of the FTC Act, *id.* § 45 (prohibiting "unfair or deceptive acts or practices in or affecting commerce"). *See* Doc. 1. As alleged in the FTC's complaint, from at least 2008 through 2012, Defendant Sann and his codefendants, operating through a maze of interrelated companies, placed charges on consumers' telephone bills for voice mail or fax services that consumers never ordered, never used, or never even knew they had. Through this unlawful scheme, Sann caused over $70 million in bogus charges to appear on consumers' telephone bills. Sann funneled the proceeds of his illegal operation into a number of different bank accounts, investment vehicles, real properties, and Relief Defendant Bibliologic, Ltd., a purported nonprofit organization. *See generally* Doc. 6 at 2–22.

2. On January 8, 2013, the FTC also filed a motion for a preliminary injunction to halt Sann's and his codefendants' unlawful activity. Among other things, the motion sought to freeze Sann's and his codefendants' assets in order to preserve this Court's ability to grant effective final relief, including possible consumer redress or disgorgement. Doc. 3. In May 2013, Sann and the FTC agreed to the entry of a stipulated preliminary injunction order ("preliminary injunction") that, among other things, froze all the assets in Sann's possession at the time of the order's entry. Doc. 55 at 7–10. The freeze also extended to the assets of Sann's codefendants and Relief Defendant Bibliologic, and to all after-acquired assets that were "derived from or otherwise relate to the placement of charges on consumers' telephone bills." *Id.* at 10.

3. Notwithstanding the asset freeze, the preliminary injunction authorized Sann and his wife, Defendant Terry Lane, to use restrained assets to pay mortgage and mortgage-related expenses on their home in Stevensville, Montana ($4,914/month), other personal and business expenses ($12,930/month), and the mortgage on two parcels of land in Montana known as Lots 2 and 3 of Big Waters Ranch ($20,265/quarter). *Id.* at 12. The preliminary injunction also authorized Relief Defendant Bibliologic to use restrained assets pay the mortgage on four other parcels of land in Montana known as the Salmon Lake Property ($34,161/quarter). *Id.* Additional restrained funds may be released only with the

consent of the FTC, or upon subsequent order of this Court. *Id.* Defendants Sann and Lane are also required to submit monthly expense reports to the FTC. *Id.* at 12–13.

4. On September 12, 2013, a grand jury empanelled in the District of Montana indicted Sann for substantially the same conduct at issue in this case. The indictment charged Sann with thirty-five counts of wire fraud, money laundering, and conspiracy. *See United States v. Sann*, No. 9:13-cr-0043 (D. Mont.) (Cr. Doc. 1) (Indictment). On April 3, 2015, Sann pleaded guilty to one count of wire fraud, one count of money laundering, and one claim of criminal forfeiture. *See* Crim. Doc. 90 (transcript from change of plea hearing). He is scheduled to be sentenced on July 17, 2015, and Sann has agreed that two years imprisonment is an appropriate sentence. Crim. Doc. 76 (plea agreement).

## II. SANN'S BANKRUPTCY

5. On September 29, 2014, Defendant Sann filed a voluntary Chapter 11 bankruptcy petition in the United States Bankruptcy Court for the District of Nevada. *In re Steven V. Sann*, No. 14-16535-ABL (Bankr. D. Nev.); *see* Doc. 86. On October 16, 2014, the FTC filed a motion in the Bankruptcy Court to transfer Sann's bankruptcy case to the District of Montana. The FTC argued that because Sann's residence, real property, the bulk of his creditors, and the Court that froze his assets were all located in Montana, he should be required to pursue any

4

bankruptcy case there, and not in Las Vegas. On November 18, 2014, Bankruptcy Judge Landis issued an oral ruling granting the FTC's motion to transfer. In his ruling, Judge Landis held that (1) venue in Nevada was improper in the first instance because Sann's residence, domicile and principal assets were all in Montana; (2) even if venue were proper in Nevada, as a matter of discretion he would transfer the case to Montana because that is the more convenient forum for almost everyone involved; and (3) in the interest of justice, he would transfer the case to Montana because Sann had engaged in improper forum shopping in an attempt to evade the effects of the civil and criminal actions pending against him in the District of Montana.[1] Judge Landis subsequently confirmed his oral ruling in a written order dated November 20, 2014. Bankr. Doc. 114. On December 12, 2014, Sann's bankruptcy case was formally transferred from Nevada and docketed in the District of Montana. *In re Steven Vincent Sann*. No. 2:14-BK-61370 (Bankr. D. Mont.).

6. On November 13, while the FTC's venue transfer motion was pending in the Nevada Bankruptcy Court, Sann filed a motion in this Court seeking "the Transfer of All Assets to the United States Bankruptcy Court for the District of Nevada." Doc. 94. After the Nevada Bankruptcy Court granted the FTC's motion to transfer venue of the bankruptcy case to Montana, Sann filed an amended

---

[1] The transcript of the Nevada Bankruptcy Court's oral ruling is attached to the

motion, seeking instead to transfer his assets to the United States Bankruptcy Court in Montana. Doc. 99. The FTC opposed Sann's motions because they essentially sought to undo the asset freeze without providing any check on Sann's use of assets — assets that could eventually be used to provide final relief to the FTC or consumers injured by Sann's unlawful activity. Doc. 103. The FTC argued that in the absence of an asset freeze, Sann, as the debtor-in-possession, would be "free to dispose of [his] assets virtually at will." Doc. 103 at 17 (citing *FTC v. R.A. Walker & Assocs., Inc.*, 37 B.R. 608, 612 (D.D.C. 1983).

7. On December 19, this Court entered an order denying Sann's motions. Doc. 111. The Court agreed with the FTC that Sann was a debtor-in-possession, with a responsibility to act as a fiduciary, like a trustee in bankruptcy. *Id.* at 4. The Court found that Sann, however, had intentionally failed to make mortgage payments authorized by the preliminary injunction, which resulted in the subject property's foreclosure, and that he had a history of unauthorized use of frozen assets. *Id.* at 3–4. As a result, the Court denied Sann's motion and left the asset freeze in place. *Id.* at 4.

8. On March 6, 2015, the United States Trustee ("UST") filed a motion to convert Sann's bankruptcy case to a Chapter 7 case, or to dismiss the case altogether. Bankr. Doc. 162. The FTC and the Montana Department of Revenue

---

UST's motion to convert or dismiss. Bankr. Doc. 162-2.

joined in the UST's motion. Bankr. Docs. 168, 172. The UST, the FTC, and the MT DOR all argued that the case should be converted to a Chapter 7 liquidation (as opposed to dismissed) for several reasons: because Sann had no income and no prospect of future income because he was facing incarceration; because Sann had grossly mismanaged the estate by failing to make mortgage payments, by filing incomplete and erroneous financial records with the Bankruptcy Court, by failing to get bankruptcy court approval before hiring professionals, and by refusing to produce documents demanded by the UST and the MT DOR; because Sann's plea of guilty to charges of fraud and money laundering disqualified him from acting as a debtor-in-possession and fiduciary of the estate; because Sann had used frozen funds to pay his bankruptcy attorney's retainer; because Sann had improperly filed his case in Nevada and claimed Nevada exemptions in order to get around the effects of the civil and criminal litigation in Montana, to the detriment of creditors including the FTC; and because a Chapter 7 trustee would be able to investigate and marshal Sann's extensive assets, as well as seek to undo preferences and fraudulent conveyances to third parties, to the benefit of all creditors.

9. Sann filed an opposition, *see* Bankr. Doc. 169, but at the hearing on the motion conceded that cause existed for dismissing or converting the case. *See* Bankr. Doc. 248 at 2. Sann argued that dismissal rather than conversion was warranted because if the bankruptcy case were dismissed, then he would be free to

7

litigate the merits of the FTC's case in District Court, where, according to Sann, he would prevail and thereby free up frozen assets that could be used to the benefit of creditors. *See* Bankr. Doc. 248 at 22.

10. In a Memorandum of Decision dated April 29, 2015, the Bankruptcy Court rejected Sann's argument and granted the motion to convert. Bankr. Doc. 248. According to the Court, Sann's optimism with regard to the FTC's case "is not supported by the record." *Id.* at 22. "While it certainly is possible that Sann ultimately will prevail against the FTC, it is in this Court's view unlikely." *Id.* at 24. The Court also held that conversion would be in the best interests of all creditors because a Chapter 7 trustee could take a number of steps that would inure to the benefit of all creditors:

> A trustee could request relief from the asset freeze from the district court, could stop the $17,844 monthly draw from the Sann's assets currently in place, could seek recovery of the transfers of money and property to Sann's family members, entities, and attorneys from unauthorized diversions, could explore curing the default in mortgage payments to stop foreclosure proceedings and preserve estate property, could investigate the Debtor's businesses and financial affairs and arrange for the preparation and filing of tax returns which the evidence shows Sann has failed to file. With respect to recovering transfers, keeping the case in bankruptcy rather than dismissing the case extends the lookback period for recovering property, as explained by the FTC's joinder. Finally, a trustee could approach the FTC and the DOR and explore the possibilities of settlement in good faith, which Sann cannot do because of the state of his relations with these entities and the UST.

*Id.* at 24. The Court issued a separate order converting the case to Chapter 7, Bankr. Doc. 250, and on April 30, 2015, Christy L. Brandon, Esq., was appointed Chapter 7 Trustee.[2] Bankr. Doc. 253. On May 15, 2015, Brandon filed a motion to be substituted in this action for Sann pursuant to Fed. R. Civ. P. 25(c), but only to the extent that the FTC seeks monetary relief against Sann. Doc. 119.

## III. ARGUMENT

### A. The Court Should Modify the Asset Freeze to Permit the Chapter 7 Trustee to Carry Out Her Statutory Duties.

11. A district court has "inherent authority to modify a preliminary injunction" when changed circumstances warrant. *A&M Records v. Napster, Inc.*, 284 F.3d 1091, 1098 (9th Cir. 2002); *see Gilmore v. California*, 220 F.3d 987, 1007 (9th Cir. 2000) ("A continuing decree of injunction directed to events to come is subject always to adaptation as events may shape the need.") (quoting *United States v. Swift & Co.*, 286 U.S. 114-15 (1932)). "The source of the power to modify is of course the fact that an injunction often requires continuing supervision by the issuing court and always a continuing willingness to apply its powers and processes *on behalf of the party who obtained that equitable relief.*" *Firefighters Loc. Union No. 1784 v. Stotts*, 467 U.S. 561, 610 (1984) (emphasis

---

[2] On May 13, 2015, Sann filed a notice of appeal of the order converting the case to a Chapter. Bankr. Doc. 272. Sann has elected to have the appeal heard by this Court rather than the Bankruptcy Appellate Panel. *Id.* Sann has not sought a stay pending appeal of the Bankruptcy Court's order.

9

added). The party seeking modification of an injunction bears the burden of establishing that a significant change in facts or law warrants revision of the terms of the injunction. *Sharp v. Weston*, 233 F.3d 1166, 1170 (9th Cir. 2000). The conversion of Sann's bankruptcy case to a Chapter 7 and the appointment of Christy Brandon as Chapter 7 trustee are significant changes in facts that warrant revision of the asset freeze provisions of the preliminary injunction.

12. In this case, the FTC originally sought a preliminary injunction with an asset freeze in order to "preserve the Court's ability to grant effective final relief, including possible [consumer] redress or disgorgement." Doc. 6 at 34. The court subsequently entered an asset freeze, and it has been in effect since May 2013. Doc. 55. To preserve and maximize the assets available for prospective relief, the FTC has resisted Sann's efforts to dissolve the freeze, *see* Docs. 78, 103, and the FTC successfully argued that the asset freeze should remain in place despite the filing of Defendant Sann's Chapter 11 bankruptcy petition.[3] Now that the Bankruptcy Court has converted Sann's bankruptcy case to a Chapter 7 and appointed a Chapter 7 trustee, the FTC believes that the best way to preserve and maximize assets for prospective relief is to modify the asset freeze to permit the

---

[3] As this Court noted, the filing of Sann's bankruptcy petition does not affect the ability of the FTC to seek or maintain injunctive relief against Sann. Doc. 111 at 4-5.

trustee to take control of the estate and carry out her statutory duties. *Cf. R,A. Walker*, 37 B.R. at 612 (declining to modify asset freeze "without a trustee or receiver to take control"); *SEC v. Wyly*, No. 10-cv-5760, 2014 U.S. Dist. LEXIS 155382, at *8 (S.D.N.Y. Nov. 3, 2014) (declining to modify asset freeze until "assets are accounted for and under the jurisdiction and control of the Bankruptcy Court").

13. To date, the District Court has kept Sann's assets under its close supervision, and the District Court should continue to do so. The Court, however, should issue an order modifying the asset freeze so that the Chapter 7 Trustee can administer Sann's bankruptcy case and the assets of the bankruptcy estate. To achieve this, the Proposed Order provides that, notwithstanding the asset freeze, the Trustee is permitted to exercise her powers and perform her duties in accordance with the Bankruptcy Code. This includes without limitation: (1) taking possession and control of and liquidating Sann's assets; (2) paying the Trustee's professionals' fees and expenses, the Trustee's fees, and amounts due to secured creditors, as approved by the Bankruptcy Court; and (3) pursuing fraudulent transfer claims and other avoidance actions against Defendant Terry Lane and Relief Defendant Bibliogic, and any other person or entity.

14. Consistent with this Court's close supervision of Sann's assets, the proposed order provides that any final distribution to creditors in accordance with

the Bankruptcy Code may take place only with this Court's approval, after the resolution of any claim by the FTC for equitable monetary relief, including any claim that Sann's property is subject to a constructive trust for the benefit of consumers. Modifying the asset freeze in this manner will permit the Trustee to perform her statutory duties while preserving the FTC's ability to obtain meaningful final relief — the reason why the FTC sought an asset freeze in the first instance.

> **B.** **The Court Should Modify the Asset Freeze to No Longer Permit Steven Sann and Terry Lane to Use Assets of the Estate to Pay Their Personal and Business Expenses.**

15. As explained above, the preliminary injunction in this case authorizes Defendants Steven Sann and his wife Terry Lane to spend up to $17,844 in frozen assets each month on personal and business expenses.[4] Sann filed his voluntary Chapter 11 petition in September 2014. As a Chapter 11 debtor-in-possession, Sann had an obligation post-petition to ensure that all expenditures paid with funds from the bankruptcy estate were consistent with his fiduciary duty to the estate and creditors. 11 U.S.C. §§ 1106(a), 1107(a), 704(a) (imposing statutory duties of Chapter 7 trustee on Chapter 11 debtor in possession). A review of expense reports submitted to the FTC, however, show that Sann spent considerable sums

---

[4] Given that the injunction has been in place now for twenty-four months, Sann and Lane have had the opportunity to dissipate over $400,000 — money that could have been used to provide relief to the FTC.

that could hardly be considered in the best interests of the estate — e.g., gifts to his wife totaling more than $30,000 dollars; tuition payments to a private religious school totaling more than $7,000; and a "loan" of $3,600 to Sann, LLC, an entity under Sann's control. *See* Declaration of Richard McKewen (submitted herewith) ¶ 4(b), (c), and (d). Furthermore, Sann apparently has not made the home mortgage payments authorized by the preliminary injunction since at least November 2014, and he has exceeded his monthly allowance for other, non-mortgage-related expenses, by almost $2,000 each month. McKewen Decl. ¶ 4(e).

16. Now that Sann's bankruptcy case has been converted to a Chapter 7 case with the appointment of a trustee, Sann no longer has any authority under the Bankruptcy Code to use property of the estate; that authority is now vested in the Chapter 7 Trustee. 11 U.S.C. §§ 704(a), 363 (vesting power in Chapter 7 trustee over use of property of the estate). All of Sann's frozen assets are property of the estate that the Chapter 7 Trustee is now charged with marshalling and preserving (to the extent of his legal or equitable interest in the assets). *See* 11 U.S.C. § 541 (defining property of estate). Thus, he should no longer be permitted under the preliminary injunction to access frozen estate assets in order to pay his day-to-day personal and business expenses. To permit him to do so would conflict with the Bankruptcy Code as applicable in a Chapter 7 case, interfere with the Chapter 7 Trustee's efforts to administer and maximize the value of the estate for the benefit

of all creditors, and permit Sann to continue to spend down assets in a manner than is not consistent with the best interests of the estate and Sann's creditors.

17. The Court should also no longer permit Defendant Terry Lane to access frozen assets in order to pay personal and business expenses. The $17,844 that Sann and Lane have been drawing down each month has come from the proceeds of the sale of property titled in the name of Sann, LLC, and held in his counsel's trust account. *See* McKewen Decl. ¶ 4(a). Documents produced by Sann in his bankruptcy case state that he holds a 98% interest in Sann, LLC. *See* Bankr. Doc. No. 190 at 5. Thus practically all of the money being held by Sann's counsel and that gets distributed each month is titled in Sann's name alone; indeed, the check sent to Sann each month from counsel is made out to Sann alone. McKewen Decl. ¶ 4(a). Sann's interest in those funds is therefore undeniably part of the bankruptcy estate. The FTC is unaware of any cash accounts titled solely in Lane's name sufficient to permit an ongoing monthly draw of $17,844. The Court should therefore strike Part IV.A and Part IV.D of the preliminary injunction that authorize Sann and Lane to use frozen assets to pay living and business expenses.[5]

---

[5] The FTC's filing of this motion is not intended to be and shall not be construed as (1) an election of remedy or (2) a waiver or limitation of any rights of the FTC, including the FTC's right: to continue prosecuting this action in this Court pursuant to the 11 U.S.C. § 362(b)(4) exception to the automatic stay; under 28 U.S.C. § 157, to have final orders in non-core bankruptcy matters entered only after de novo review by a District Court judge, or have the District Court withdraw

Dated: May 18, 2015			Respectfully submitted,


				/s/ Richard McKewen
				RICHARD McKEWEN (WSBA No. 45041)
				MICHAEL P. MORA (IL Bar No. 6199875)
				Federal Trade Commission
				Northwest Regional Office
				915 Second Ave., Suite 2896
				Seattle, WA 98174
				Phone:  206-220-6350
				Fax:  202-220-6366
				E-mail:  rmckewen@ftc.gov
				         mmora@ftc.gov

				ATTORNEYS FOR PLAINTIFF
				FEDERAL TRADE COMMISSION


CERTIFICATION OF BRIEF LENGTH
PURSUANT TO LOC. CIV. R. 7.1(d)(2)(E)

I hereby certify that the total word count of the body of the foregoing brief, as calculated by Microsoft Word, is 3,392 words.

				/s/ Richard McKewen
				RICHARD McKEWEN

---

the reference of any matter subject to withdrawal; or any other rights, claims, actions, defenses, setoff, recoupment, or remedies to which the FTC is or may be entitled, all of which the FTC expressly reserves.

CERTIFICATE OF SERVICE

       I hereby certify that on this 18th day of May, 2015, I caused the foregoing document to which this certificate is attached to be delivered to the following, in the manner indicated:

| | |
|---|---|
| Michael J. Sherwood, Esq. | Andrew B. Lustigman, Esq. |
| Sarah J. Rhoades, Esq. | Scott A. Shaffer, Esq. |
| Michael J. Sherwood, P.C. | Olshan Grundman Frome |
| 401 N. Washington | Rosenzweig & Wolosky LLP |
| P.O. Box 8358 | Park Avenue Tower |
| Missoula, Montana 59807 | 65 East 55th Street |
| mike@mjsherwoodlaw.com | New York, NY 10022 |
| sarah@mjsherwoodlaw.com | alustigman@olshanlaw.com |
| *via CM/ECF Notification* | sshaffer@olshanlaw.com |
| | *via CM/ECF Notification* |

Counsel for Defendants American eVoice, Ltd.; Emerica Media Corporation; FoneRight, Inc.; Global Voice Mail, Ltd.; HearYou2, Inc.; Network Assurance, Inc.; SecuratDat, Inc.; Techmax Solutions, Inc.; Voice Mail Professionals, Inc.; Bibliologic Ltd.; Steven V. Sann; Terry D. Lane a/k/a Terry D. Sann; and Nathan M. Sann.

Stephen Schwartz, Esq.
Brian Blankenship, Esq.
Schwartz Flansburg
6623 Las Vegas Blvd. South, Suite 300
Las Vegas, NV  89119
sam@schwartzlawyers.com
bryan@schwartzlawyers.com
v*ia CM/ECF Notification*

Counsel for Defendant Steven V. Sann

Joshua S. Van de Wetering, Esq.
Van de Wetering & Baffa Law Offices pc
269 W. Front St.
Missoula, MT 59801
josh@vdwlaw.net
*via CM/ECF Notification*

Counsel for Defendant Robert M. Braach


Robert K. Baldwin, Esq.
Trent M. Gardner, Esq.
Kyle W. Nelson, Esq.
GOETZ, BALDWIN & GEDDES, P.C.
35 N. Grand
P.O. Box 6580
Bozeman, MT 59771-6580
Phone: (406) 587-0618
Fax: (406) 587-5144
rbaldwin@goetzlawfirm.com
tgardner@goetzlawfirm.com
knelson@goetzlawfirm.com
*via CM/ECF Notification*

Counsel for Chapter 7 Trustee Christy L. Brandon, Esq.


                                            /s/ Richard McKewen
                                            RICHARD McKEWEN