

FILED
DEC 0 8 2015
Clerk, U.S District Court
District Of Montana
Missoula

| | |
|---|---|
| FEDERAL TRADE COMMISSION,<br><br>Plaintiff,<br><br>vs.<br><br>AMERICAN EVOICE, LTD., EMERICA MEDIA CORPORATION, FONERIGHT, INC., GLOBAL VOICE MAIL, LTD., HEARYOU2, INC., NETWORK ASSURANCE, INC., SECURATDAT, INC., TECHMAX SOLUTIONS, INC., VOICE MAIL PROFESSIONALS, INC., STEVE V. SANN, TERRY D. LANE, a/k/a TERRY D. SANN, NATHAN M. SANN, ROBERT M. BRAACH,<br><br>Defendants.<br><br>and<br><br>BIBLIOLOGIC, LTD.,<br><br>Relief Defendant. | CV 13–03–M –DLC<br><br>ORDER |

Before the Court are multiple motions filed by Defendants requesting the release of frozen or restrained assets to be used for attorneys' fees. First, Defendants Steven V. Sann ("Sann"), Terry Lane, and Emerica Media Corporation, and Relief Defendant Bibliologic, Ltd., (collectively "Defendants")

1

move the Court to release $150,000 from currently restrained assets to be applied towards attorneys' fees (Doc. 126). Second, Relief Defendant Bibliologic, Ltd., ("Bibliologic"), on behalf of all Defendants except Robert Braach, moves the Court to release funds from currently restrained assets to pay for future attorneys' fees, or in the alternative, to allow its attorneys to withdraw from representation in this case (Doc. 171). Third, Bibliologic moves the Court to release funds to pay for future attorneys' fees to defend against an adversary action filed in Bankruptcy Court (Doc. 173). Fourth, the Schwartz Law Firm, Inc., Nevada bankruptcy attorneys for Sann, moves the Court for approval to use funds currently held in SLF's trust account to pay for past legal fees and costs (Doc. 133.) For the reasons explained below, the Court will deny these motions as they pertain to the use of assets for attorneys' fees, but will grant the alternative motion for attorney withdrawal.

## BACKGROUND

On May 8, 2013, this Court issued a Stipulated Preliminary Injunction (Doc. 55) in this matter freezing Defendants and Bibliologic's assets. The Preliminary Injunction provided that Defendants Sann and Terry Lane a/k/a Terry Sann ("the Sanns") may use a portion of the frozen funds on a monthly basis to pay for living, business, or other expenses. This carve-out from the asset freeze allowed the

Sanns to use $4,914 to pay their mortgage and mortgage-related expenses, and $12,930 for personal and business expenses. Further, Bibliologic is allowed under the Preliminary Injunction to use $15,000 from the frozen assets to pay for property maintenance expenses, property leasing expenses, property taxes, and insurance. The Preliminary Injunction further provides that "[r]estrained assets may be released to pay a Defendant's or Relief Defendant's other reasonable and necessary living expenses, business expenses, or attorneys' fees only upon further order of this Court, or with the written consent of the FTC." (Doc. 55 at 12.)

Four months after the Preliminary Injunction was issued, Sann was indicted on criminal charges of wire fraud and money laundering. On November 21, 2013, the Court issued an order allowing Sann to access $150,000 from the frozen assets to pay attorneys' fees and other expenses for his criminal defense. These funds were deposited with the Clerk of Court and withdrawn incrementally to pay for Sann's defense. Present counsel for Sann states, upon information and belief, that roughly $50,000 remain on deposit with the Court.

On September 29, 2014, Sann filed a Chapter 11 bankruptcy petition in the United States Bankruptcy Court for the District of Nevada. This bankruptcy petition was then transferred to the United States Bankruptcy Court for the District

of Montana and converted to a Chapter 7 proceeding.[1]  *In re Steven Vincent Sann*, No. 14-61370-11 (Bankr. D. Mont.).  Christy L. Brandon (the "Trustee") was appointed as Trustee for the bankruptcy estate and has since been substituted in this matter in place of Sann for all aspects of the case implicating the property of the bankruptcy estate.

On August 20, 2015, this Court issued an order (Doc. 169) finding that the assets frozen under the Preliminary Injunction were now property of the bankruptcy estate and modified the Preliminary Injunction to permit the Trustee to administer the estate.  This modification allowed the Trustee to take possession of the estate and use a portion of frozen assets to pay: (1) approved creditors; (2) fees and expenses of professionals approved by the Bankruptcy Court; and (3) fees payable to the Trustee.  This modification also deleted Parts IV.A and IV.D of the Preliminary Injunction, which provided the carve-out for living expenses and mortgage payments to the Sanns.  However, this modification had no effect on the provision of the Preliminary Injunction which allowed the release of assets upon order of this Court for Defendants' "reasonable and necessary living expenses, business expenses, or attorneys' fees." (Doc. 55 at 12.)  This section of the

---

[1] The Bankruptcy Court's Order converting the bankruptcy estate from Chapter 11 to Chapter 7 is presently before this Court on appeal.  *In re Steven Vincent Sann*, CV-15-57-M-DLC.  The merits of that appeal will be addressed in a separate order.

Preliminary Injunction forms the basis for Defendants' motions.

## DISCUSSION

### I. Motions For Release of Attorneys' Fees (Docs. 126 and 171 )

Defendants first move the Court through two separate motions to permit the payment of attorneys' fees from the frozen assets under the Preliminary Injunction. The first motion (Doc. 126) requests the release of $150,000 of the frozen assets to pay for attorneys' fees already earned by Defendants' counsel. This motion suggests that the funds can initially be taken from the unused funds held on deposit by the Court for Sann's criminal defense, again represented to be approximately $50,000.

The second motion (Doc. 171), brought by Bibliologic on behalf of the other Defendants, requests the release of additional frozen assets to pay for future attorneys' fees to be incurred on an on-going basis. This motion also requests that, if the Court decides not to release the restrained assets for attorneys' fees, then defense counsel should be permitted to withdraw from representation in this action.

These dual motions bring substantially the same arguments, mainly that: (1) other courts have permitted frozen assets to be used for attorneys' fees; (2) it is unfair to allow frozen assets to be used for the Trustee's fees, but not other

5

Defendants; and (3) this case involves complex litigation and Sann cannot be expected to proceed without the benefit of attorney representation. The Court is not persuaded by these arguments.

In general, there is no constitutional right to defense counsel in civil cases. *Sanchez v. United Parcel Serv. Inc.*, 2015 WL 5257064, at *1 (9th Cir. Sept. 10, 2015) (citing *United States v. Sardone*, 94 F.3d 1233, 1236 (9th Cir.1996)). District courts thus retain the discretion whether to "forbid or limit payment of attorney fees out of frozen assets." *Commodity Futures Trading Commn. v. Noble Metals Intern., Inc.*, 67 F.3d 766, 775 (9th Cir. 1995) (affirming district court's total prohibition of payment of attorneys' fees from frozen assets). Courts may consider many factors in determining whether the release of restrained assets to pay for defense counsel is appropriate, including whether the total amount of frozen assets would be insufficient to compensate any potential victims of the alleged fraud. *Id.* (stating that "[a]ccording to the record, the frozen assets fell far short of the amount needed to compensate [the defendants'] customers").

Here, two factors counsel against the release of frozen assets for attorneys' fees. First, there is the distinct possibility that, if the FTC prevails over Defendants in this suit, the amount of assets available for equitable relief would be less than the total amount sought by the FTC. In its briefing, the FTC asserts that

Defendants are responsible for over $70 million in unauthorized telephone charges and have retained $25 million in net revenues. Defendants do not dispute these figures in their briefing, but counter that the vast majority of their alleged victims already had a remedy available to them through two class action lawsuits in the Northern District of California. *See Moore v. Verizon Commc'ns*, No. C 09–1823 SBA, 2013 WL 4610764 (N.D. Cal. Aug. 28 2013); *Nwabueze v. AT&T Inc.*, C 09-01529 SI, 2013 WL 6199596 (N.D. Cal. Nov. 27, 2013), appeal dismissed (Mar. 19, 2014). Thus, Defendants argue, the frozen funds are not needed to compensate the alleged victims.

Contrary to this argument, however, a cursory review of *Nwabueze* and *Moore* reveal that Defendants, including Sann, are not named parties in those suits. *See Moore*, 2013 WL 4610764; *Nwabueze*, 2013 WL 6199596. The Court thus has great doubts that the alleged consumer victims of Defendants have a current viable remedy before them. Further, the FTC not only seeks restitution for Defendants' allegedly deceived consumers, it also seeks disgorgement of any illegally obtained assets. (Doc. 1 at 17.) If the FTC prevails in this suit, the Court has a responsibility to ensure that any illegally obtained assets are available for not only restitution to the victims, but also to satisfy a disgorgement judgment. *See Commodity Futures Trading Commn. v. Kimberlynn Creek Ranch, Inc.*, 276 F.3d

187, 193 (4th Cir. 2002) (stating that the district court had the "authority to impose a preliminary injunction freezing assets in order to preserve the future availability of permanent equitable relief," including disgorgement relief).

Second, even if the Court disregarded the potential equitable relief sought by the FTC, it cannot ignore the existence of Sann's current bankruptcy proceeding and the related adversary complaints against the entity Defendants. In this Court's order dated August 20, 2015, the Court recognized that Sann's frozen assets were now the property of the bankruptcy estate.[2] (Doc. 169 at 2.) If the FTC is ultimately unsuccessful in this suit, any assets frozen under the Preliminary Injunction may be needed to compensate Sann's creditors. Allowing the further withdrawal of additional funds from the frozen assets would ultimately deplete the bankruptcy estate and deprive any potential creditors of reimbursement.

Additionally, the Court acknowledges the fact that it previously allowed Sann to access $150,000 of the frozen assets to be used for his criminal defense. However, in this Court's order dated November 21, 2013, which released these funds, the Court noted the unique circumstances in allowing Sann to access these funds–namely the need to balance Sann's "right to counsel and the FTC's interest

---

[2] Notwithstanding the recognition, the Court also outlined that any property contained in the bankruptcy estate may be subject to the constructive trust sought in this case. (Doc. 169 at 3-4.)

8

in preserving assets to satisfy any judgment for restitution or disgorgement." (Doc. 80 at 4.) Here, in the context of this civil proceeding, the constitutional right to counsel is simply not present.

Finally, though Defendants second motion for attorneys' fees (Doc. 171) requests the release of fees for the benefit of all Defendants and is substantially similar to the arguments made in favor of the first motion, the brief in support of the second motion makes various arguments distinguishing Bibliologic from the other Defendants. Mainly, Bibliologic argues that it should be entitled to the release of frozen assets for attorneys' fees because it is merely a relief defendant and has not been accused of any wrongdoing. In contrast to this argument, the Trustee asserts that Bibliologic and its assets are directly linked to Defendants' alleged unlawful activities. Further, the Trustee has provided evidence that Bibliologic was used by Sann to pay for his various attorneys, including a wire transfer of $425,000. These claims are not disputed in Defendants' reply briefs. The Court is thus persuaded that releasing frozen funds to be used for attorneys' fees for any Defendant would be inappropriate and declines to do so.

For the reasons explained above, the Court will deny Defendants' motions for the release of frozen funds to provide for attorneys' fees (Docs. 126, 171). However, the Court will partially grant Defendants' second motion (Doc. 171) as

it pertains to the request for attorney withdrawal. The Court finds good cause for attorney withdrawal and will allow it.[3]

**II. Release of Attorneys' Fees to Defend Adversary Action (Doc. 173)**

Bibliologic also moves the Court for the release of frozen funds to be used in defending against an adversarial proceeding filed by the Trustee in Bankruptcy Court. In its brief in support of the motion, Bibliologic provides the same arguments stated in the two previous motions discussed above. As such, the Court will deny this motion for the reasons explained in Section I.

**III. Motion to Release Funds Held in Trust Account (Doc. 133)**

Lastly, the Schwartz Law Firm, Inc., ("SLF"), moves the Court for approval to use $17,000 in funds currently held in their trust account to pay for past legal fees and costs. SLF, who provided representation in Sann's bankruptcy proceeding, provides that these funds were specifically carved out of the stipulated Preliminary Injunction under Part IV.C. This provision of the Preliminary Injunction states that "Relief Defendant Bibliologic may pay property maintenance expenses, property leasing expenses, property taxes, and insurance, in an amount not to exceed $15,000 each calendar month." (Doc. 55 at 12.) SLF explains that,

---

[3] The Court anticipated this possible outcome in the scheduling order issued in this case (Doc. 193), by establishing deadlines that should allow Defendant Sann to represent himself in the ongoing proceedings.

pursuant to this carve-out, Bibliologic paid Sann, LLC, $4,000 per month in property leasing expenses. Sann, LLC, then collected $17,000 of these funds and used them to pay SLF's retainer. Thus, SLF argues, because these funds were expressly carved out by the Preliminary Injunction, they are not subject to the asset freeze order. The Court is not convinced and will deny this motion for two reasons.

First, the FTC asserts that Sann, LLC, is essentially the alter-ego of Sann due to his 98% ownership in the company. In its reply brief, SLF does not dispute this and, instead, applies a strained reading of the Preliminary Injunction in an attempt to distinguish the lease payments as an allowable carve-out to the asset freeze. Essentially, SLF is contending that because these payments are allowed under the Preliminary Injunction, it does not matter that they were authorized by Bibliologic, an entity whose assets were allegedly derived from Defendants' unlawful activities, and then paid to company that is the alter-ego of Sann, who subsequently paid the retainer of Sann's attorneys. The Court finds this to be nothing more than an attempt to circumvent the asset freeze, justifying the Court's finding that the best course of action in this case is to treat these funds as frozen assets, pending the resolution of this proceeding.

Second, if Defendants are successful in this action and prove that these

assets were not derived from illegal activities, these funds may be the property of the bankruptcy estate. Due to this possibility, the Court finds that these funds will be considered frozen assets subject to the Stipulated Preliminary Injunction in order to preserve them for consideration by the Bankruptcy Court.

Accordingly, IT IS ORDERED:

(1) Defendants' motion for attorneys' fees (Doc. 126) is DENIED.

(2) Defendants' motion for attorneys' fees, or in the alternative, for attorney withdrawal (Doc. 171) is partially GRANTED with regards to attorney withdrawal. The motion is DENIED in all other respects.

(3) Defendant Bibliologic's motion for the release of attorneys' fees to defend against the adversary action in Bankruptcy Court (Doc. 173) is DENIED.

(4) Defendants' motion to release funds held in the Schwartz Law Firm's trust account (Doc. 133) is DENIED.

Dated this 8th day of December, 2015.

Dana L. Christensen, Chief Judge
United States District Court