

FILED

FEB 03 2017

Clerk, U.S. District Court
District Of Montana
Missoula

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
MISSOULA DIVISION

| FEDERAL TRADE COMMISSION, | CV 13–03–M–DLC |
| Plaintiff, | |
| | ORDER |
| vs. | |
| AMERICAN EVOICE, LTD., EMERICA MEDIA CORPORATION, FONERIGHT, INC., GLOBAL VOICE MAIL, LTD., HEARYOU2, INC., NETWORK ASSURANCE, INC., SECURATDAT, INC., TECHMAX SOLUTIONS, INC., VOICE MAIL PROFESSIONALS, INC., STEVE V. SANN, TERRY D. LANE, a/k/a TERRY D. SANN, NATHAN M. SANN, ROBERT M. BRAACH, | |
| Defendants. | |
| and | |
| BIBLIOLOGIC, LTD., | |
| Relief Defendant. | |

The parties move for various relief. Plaintiff Federal Trade Commission

("FTC") moves the Court to: (1) impose sanctions against Defendant Steven V.

1

Sann ("Sann") and the Corporate Defendants[1] in this case as a result of their

failure to appear for depositions and produce discovery (Doc. 240); (2) compel

Defendant Terry Lane a/k/a Terry Sann ("Lane") to produce outstanding discovery

(Doc. 240); (3) compel Sann to appear for depositions following the production of

the outstanding discovery (Doc. 245); and (3) issue summary judgment in favor of

the FTC and against Sann, Lane, and the Corporate Defendants (Doc. 245).[2] In

contrast, Sann moves the Court to: (1) issue a protective order preventing his

deposition (Doc. 242); (2) compel the FTC to produce documents in printed form

rather than in paper (Doc. 257); (3) modify the current Scheduling Order to

continue the time for discovery, and to continue the final pretrial conference and

trial date (Doc. 256); and (4) extend the time for Sann and the Corporate

Defendants to respond to the FTC's motions (Doc. 259). As discussed in detail

below, the Court will deny in part and grant in part these motions.

## BACKGROUND

For purposes of the motions at bar, the Court will not repeat the full and

---

[1] These Defendants are: American eVoice, Ltd.; Emerica Media Corp.; FoneRight, Inc.; Global Voice Mail, Ltd.; HearYou2, Inc.; Network Assurance, Inc.; SecuratDat, Inc.; Techmax Solutions, Inc.; and Voice Mail Professionals, Inc.

[2] Sann and the FTC have has filed cross-motion for summary judgment as to Defendants' claim that they are "common carriers" under the law and, thus, exempt from liability under the allegations raised in the FTC's Complaint. (*See* Docs. 232; 236.) As discussed below, the Court considers these motions fully briefed and will issue a separate Order addressing them.

complicated history of this case. Suffice to say this case involves an alleged scheme by Defendants to defraud consumers by "cramming" their landline telephone bills with unwanted and unutilized telecommunications services, including voicemail, digital fax, and call forwarding. Through its Complaint filed January 8, 2013 (Doc. 1), the FTC alleges that Defendants' alleged scheme violated section 5(a) of the Federal Trade Commission Act, 15 U.S.C. § 45(a), and requests injunctive and other equitable relief, including rescission or reformation of contracts, restitution, the refund of monies paid, and disgorgement of unlawfully obtained assets.

Sann, who is alleged by the FTC to be the ringleader of this scheme, was indicted in the United States District Court for the District of Montana on 32 counts of Wire Fraud in violation of 18 U.S.C. § 1343, 2 counts of Money Laundering violation of 18 U.S.C. § 1957, and 1 count of Conspiracy in violation of 18 U.S.C. § 371. Sann ultimately pled guilty to 1 count of Wire Fraud and 1 count of Money Laundering, and was sentenced by this Court on July 17, 2015, to twenty four months on each count to run concurrently. Sann is currently incarcerated in Taft Correctional Institution ("Taft CI") in Taft, California, and states that he is scheduled to be released to a "half-way house" in mid-February, 2017.

3

During Sann's criminal proceedings, this matter was stayed.[3] Following resolution of the criminal matter, the Court lifted the stay and held a preliminary pretrial scheduling conference on November 12, 2015. During this pretrial conference, the parties discussed various motions filed on behalf of Defendants which requested the release of currently restrained assets to be applied towards attorneys' fees. These assets were frozen pursuant to a stipulated Preliminary Injunction Order entered by the Court on May 8, 2013 (Doc. 55). Defendants' counsel stated that if the funds were not released, they would be forced to withdraw and Defendants would be required to represent themselves pro se through the entirety of this litigation.

The Court expressed that it understood that denial of the motions for the release of funds would result in Defendants representing themselves pro se and decided to set a lengthier discovery and motions period to account for this possibility. Further, the Court noted that Sann would most likely be released from prison in spring of 2017 and set a bench trial date of March 20, 2017, to allow him to appear personally. Following the preliminary pretrial scheduling conference,

---

[3] The Court notes that the stay was intermittently lifted in order to enter various nondispositive Orders (*See e.g.* Doc. 89 (Order lifting stay for limited purpose of allowing Sann to move for the admission of *pro hace vice* counsel and allowing Sann to move for the transfer of his assets to Bankruptcy Court)) and an Order lifting the stay for the limited purpose of entering two stipulated preliminary injunctions (Doc. 54).

4

the Court denied Defendants' motions for the release of funds and allowed counsel for Defendants to withdrawal from representation. (Doc. 196.)

Despite the measures taken by the Court, it appears that various issues have arisen concerning the discovery and the motions deadlines. As discussed above, Sann, as the self-described representative for the Corporate Defendants in this case, has refused to appear for scheduled depositions and now moves for a protective Order preventing his deposition. In response to this refusal, the FTC moves for sanctions against Sann in the form of a Court order directing that certain facts be taken as true pursuant to Federal Rule of Civil Procedure 37.

Further, Defendant Lane, Sann's wife and apparent agent for Sann, has been instructed by Sann that she is no longer his agent and has refused to produce several emails requested for production. The FTC now moves to compel the production of these emails, and to compel Sann to appear for his deposition following the production of these emails.

Additionally, Sann moves to extend the discovery deadline in this case and to extend the time to respond to the FTC's motions until he is released from prison and is free to conduct his case. The Court will address these motions below.

## I. Discovery Motions

As discussed, the Court set an uncharacteristically long period for discovery

5

due to the potential that Defendants would be representing themselves pro se and because Sann would be incarcerated. However, despite this long schedule, problems have arisen. Specifically, Sann has moved for a protective order preventing his deposition and Lane has refused to produce certain documents requested by the FTC. The FTC now moves for sanctions, to compel Sann to appear at his deposition, and to compel production of certain documents.

### A. Motion for Sanctions and to Compel Deposition (FTC)

On September 28, 2016, the Court granted the FTC's motion, pursuant to Federal Rule of Civil Procedure 30(a)(2)(B), to depose Sann in his individual capacity and as the Rule 30(b)(6) designee of the Corporate Defendants in this action.[4] (Doc. 231.) This motion was unopposed. As such, the FTC coordinated with prison officials at Taft CI and arranged for depositions to occur on November 7, 2016. Despite his previous lack of objection, Sann emailed the FTC on November 1, 2016, stating his intentions to move for a protective order precluding the depositions of him the Corporate Defendants. Later, on November 4, 2016, a prison official at Taft CI emailed counsel for the FTC and stated "Inmate Sann has changed his mind and is declining to participate in the deposition scheduled for

---

[4] The Court notes that Sann has never objected to his designation as the designee for the Corporate Defendants and refers to himself in emails with the FTC as their "corporate representative." (Doc. 240-1 at 68.)

Monday, November 7, 2016." (Doc. 240-1 at 66.)

Apparently, Sann believed that he would be able to review the discovery prior to his deposition in order to prepare. However, the discovery provided by the FTC is saved to a CD-ROM and, due to restrictions imposed on inmates at Taft CI, Sann is not allowed to possess or review the disk. Further, due to a lack of space in inmates' cells, Sann is unable to store the vast majority of the discovery, which consists of tens of thousands of pages. Because he is unable to review the discovery and prepare for his deposition, Sann seeks a protective order preventing his deposition until he is released from prison and can review the discovery. Consequently, the FTC seeks sanctions against Sann for his alleged refusal to be deposed.

Federal Rule of Civil Procedure 37(d) states that a court "may, on motion, order sanctions if a party or a party's officer, director, or managing agent—or a person designated under Rule 30(b)(6) or 31(a)(4)—fails, after being served with proper notice, to appear for that person's deposition." Fed. R. Civ. P. 37(d)(1)(A)(i) (internal punctuation omitted). Sanctions for failure to appear include:

> (i) directing that the matters embraced in the order or other designated facts be taken as established for purposes of the action, as the prevailing party claims;

(ii) prohibiting the disobedient party from supporting or opposing designated claims or defenses, or from introducing designated matters in evidence;
(iii) striking pleadings in whole or in part;
(iv) staying further proceedings until the order is obeyed;
(v) dismissing the action or proceeding in whole or in part;
(vi) rendering a default judgment against the disobedient party; or
(vii) treating as contempt of court the failure to obey any order except an order to submit to a physical or mental examination.

Fed. R. Civ. P. 37(b)(2)(A)(i)–(vi); (d)(3). The Ninth Circuit construes Rule 37(d) strictly. *Estrada v. Rowland*, 69 F.3d 405, 406 (9th Cir. 1995). In *Estrada*, the plaintiff, a prisoner acting pro se, appeared at his deposition but refused to testify. *Id.* at 405. The district court determined that the prisoner had violated Rule 37(d) and dismissed the action. The Ninth Circuit reversed the district court and determined that the prisoner had not actually "'fail[ed] to appear' for the purposes of Rule 37(d)." *Id.* at 406 (citing *R.W. Int'l Corp. v. Welch Foods, Inc.*, 937 F.2d 11, 15 n. 2 (1st Cir. 1991) ("'failure to appear' for a deposition is strictly construed and Rule 37(d) sanctions apply only when a deponent literally fails to show up for a deposition session")). Instead, the Ninth found that the proper remedy was to order the prisoner to testify under Rule 37(a). *Id.*

Here, the depositions scheduled for November 7, 2016, were canceled by the FTC and did not go forward. As such, this is not a case where depositions were held and Sann did not appear. In fact, after reviewing the emails between

8

Sann and the FTC, it appears that Sann did not expressly state he would not be deposed. *(See* Doc. 240-1 at 57–68.) Instead, Sann informed the FTC that he was seeking a protective order and would assert his Fifth Amendment rights if deposed. (Doc. 240-1 at 57 ("As I said, you are entitled to take my deposition, but not to ambush me without preparaton [sic] and expose me to governmental action directed at taking away my liberties and consititutional [sic] rights."); Doc. 240-1 at 68 ("So, if you want a transcript replete with responses asserting my Fifth Amendment rights, by all means, file your motion with the court.").) Based upon these facts, the Court finds that Sann did not expressly violate Rule 37(d). As such, the Court will grant the FTC's motion to the extent it seeks to compel Sann to appear for his deposition but will deny the motion as it pertains to sanctions as a result of Sann's refusal to cooperate. *See* Fed. R. Civ. P. 37(a).

Nevertheless, the Court understands why the FTC did not go forward with the scheduled deposition. As noted, the FTC received an email from a prison official that Sann was not going to participate in the deposition. Based upon this email, the Court recognizes that if the FTC had actually traveled to Taft CI to depose Sann the result would have been an exercise in futility.

However, because the Court now compels Sann to appear for his and the Corporate Defendants' depositions, the Court cautions Sann that failure to appear

9

may result in drastic sanctions, including designating that certain "facts be taken as established for purposes of the action," or the entry of default judgment. *See* Fed. R. Civ. P. 37(b)(2)(a). In granting the motion to compel, the Court will also deny Sann's motion for a protective order as it concerns his request to delay his deposition indefinitely. Contrary to Sann's argument, the Court is not aware of any right under the rules of discovery to postpone a deposition in order to prepare and Sann fails to cite to such a right.

Further, the Court cautions Sann that refusal to answer the FTC's deposition questions, without a valid objection grounded in the law, may result in the imposition of sanctions, including but not limited to the Court drawing an adverse inference from the non-response. *Nationwide Life Ins. Co. v. Richards*, 541 F.3d 903, 911 (9th Cir. 2008) ("When a party asserts the privilege against self-incrimination in a civil case, the district court has discretion to draw an adverse inference from such assertion.") (citations omitted). As such, the Court will grant leave to the FTC to file a second motion for sanctions if Sann, individually or as designee of the Corporate Defendants, either fails to appear for depositions or refuses to participate.

## B. Sanctions for Failure to Produce Documents

Unlike Sann's failure to participate in his and the Corporate Defendants'

depositions, Defendants Sann and Lane's apparent refusals to produce certain documents is a more serious issue for the Court. On February 23, 2016, the FTC served Requests for the Production of Documents ("RFPs") on Sann, Lane, and the Corporate Defendants. These RFPs requested documents concerning Defendants' business activities, communications amongst themselves, and communications between Defendants and third parties "relating to the marketing or billing of voice mail, electronic fax, or text-to-voice services, or the placement of charges on consumers' telephone bills . . . ." (Doc. 240-1 at 71–75.) After some back and forth between Sann and the FTC,[5] Sann, through Lane, began to produce discovery on a rolling basis. This discovery consisted of ten banker's boxes and one portable hard drive. However, during discussions between the FTC and Sann regarding the production of discovery, it became apparent that several emails responsive to the FTC's RFPs had not been produced. These emails were

---

[5] Apparently, after receiving the FTC's FRPs, Defendants Sann, Lane and the Corporate Defendants issued near-identical responses where they argued that they could not produce the requested discovery because the documents were not "presently in [their] custody, control, and/or possession." (Doc. 240-1 at 143 (emphasis in original).) However, Defendants went on to state that these documents were located at either: (1) Sann's "home" (presumably his Stevensville, Montana address); (2) Defendant Robert Braach's office; (3) the office of Sann's previous criminal attorney; or (4) the offices of Sann's former attorneys in this matter. After the FTC explained to Defendants that because they had the legal right to obtain the documents, they were technically in their "control" for purposes of discovery, citing to *In re Bankers Trust Co.*, 61 F.3d 465, 469 (6th Cir. 1995), Lane began to produce the requested discovery on behalf of Defendants.

previously hosted by Defendants' third-party email service provider, AppRiver.

However, according to the FTC, Sann had AppRiver create a "backup" of the

emails on a separate hard drive.[6]  This hard drive was reportedly retrieved by Lane

from their home in Stevensville, Montana.

Despite Lane's earlier cooperation in producing the requested discovery, it

now appears that Sann longer considers her to be his agent and has apparently

instructed her not to produce the emails.  This is despite the fact that Lane has

testified in her deposition and stated in correspondence with the FTC that these

emails are in her possession.  (Doc. 240-1 at 203, 215.)  To date, the FTC has not

received the AppRiver emails.

Pursuant to Federal Rule of Civil Procedure 26(b), a party may obtain

discovery regarding any nonprivileged matter that is relevant to any party's claim

or defense.  Fed. R. Civ. P. 26(b)(1).  Relevant information includes any

information reasonably calculated to lead to the discovery of admissible material.

*DLJ Mortg. Capital, Inc. v. Lemon Creek Ranch, LLC*, WL 12134036, at *3 (D.

Mont. Sept. 3, 2013).  Accordingly, "[a] party may serve on any other party a

request within the scope of Rule 26(b)(1) to produce and permit the requesting

---

[6] The FTC notes that Sann stated that he had canceled the AppRiver service a year before
he reported to prison, which was in August of 2015.  However, Lane later stated in an email to
the FTC that the AppRiver emails were "backed up" on May 9, 2016.  (Doc. 240-1 at 196.)

party or its representative to inspect [designated documents] in the responding party's possession, custody, or control. Fed. R. Civ. P. 34(a)(1)(A). "A party is deemed to have control over documents if he or she has a legal right to obtain them." *Bryant v. Armstrong*, 285 F.R.D. 596, 607 (S.D. Cal. 2012) (citing *United States v. Int'l Union of Petroleum & Indus. Workers*, 870 F.2d 1450, 1452 (9th Cir. 1989).

Here, as discussed, the FTC's RFPs sought documents concerning Defendants' business activities, communications amongst themselves, and communications between Defendants and third parties "relating to the marketing or billing of voice mail, electronic fax, or text-to-voice services, or the placement of charges on consumers' telephone bills . . . ." (Doc. 240-1 at 71–75.) After further communications with Lane, the FTC determined that the AppRiver emails were within in the scope of the FTC's RFPs. Based upon the above facts, the Court agrees with the FTC that the AppRiver emails are subject to the FTC's RFPs and must be produced. Because these emails are not only within Lane's control and, in fact, are actually in her physical possession, the Court will order Lane to produce these emails immediately. Failure to immediately produce these emails may result in the issuance of sanctions against Lane to include, but not limited to, striking her Answer or the entry of default against her. *See* Fed. R. Civ. P.

37(b)(2)(A)(i)–(vi); (d)(3).

In addition to the request to compel production of these emails, the FTC also requests sanctions against Sann as a result of his actions in instructing Lane not to produce the emails. The Court has seriously weighed this option and has concluded that sanctions against Sann, at this time, will not be issued. Based upon the record before the Court, it appears that Sann initially cooperated in the production of discovery by apparently instructing Lane to produce the requested discovery. Because of this initial show of good-faith, the Court declines to impose sanctions at this time. However, the Court cautions Sann that failure to abide by the Rules of Civil Procedure in the future may result in Rule 37 sanctions. Accordingly, the Court will deny the FTC's motion for sanctions without prejudice.

### C. Sann's Motion to Compel

Similar to the FTC's motion to compel, Sann also moves to compel discovery from the FTC. Sann's motion requests two things: (1) to compel the FTC to produce its discovery in paper form, as opposed to a CD-ROM; and (2) to compel additional responses to his interrogatories. The Court will address Sann's motion in separate parts.

14

### i. Form of Discovery

As discussed, the FTC has compiled discovery in response to Sann's request for production of documents and saved it to a CD-ROM. The documents on this disk represent more than 30,000 pages of discovery. The FTC has offered to send this disc to Sann but, due to inmate restrictions at Taft CI, he is not allowed to possess or review the disk. The FTC has also offered to send the discovery to Lane instead, but Sann has refused. Confusingly, Sann apparently requests that the FTC produce the discovery in paper form, even though he cannot store the vast majority of the discovery in his cell. The FTC reports that the cost of processing, printing, and shipping the discovery to Sann would cost roughly $4,000. Additionally, upon shipment, Taft CI would likely either refuse or destroy the documents. Consequently, because he is not able to personally receive or review the discovery, Sann argues that the FTC has not produced the documents under Rule 34. As a remedy, Sann argues that the Court should grant his motion to reschedule the trial for six months after he is released from prison.

"Under Rule 26(b)(2), courts must weigh the burden or expense of proposed discovery against its likely benefit, taking into account 'the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the litigation, and the importance of the proposed discovery in resolving the

issues.'" *Green v. Baca*, 219 F.R.D. 485, 493 (C.D. Cal. 2003) (citing Fed. R. Civ. P. 26(b)(2)).

Here, the Court has no trouble concluding that the discovery in this case is important and vital to resolving the issues raised in the FTC's Complaint. However, producing the discovery in paper form would be overly expensive and burdensome to the FTC given the fact it is willing to produce the discovery on CD-ROM, a common and ordinary way of exchanging information during litigation. The real problem raised in Sann's motion, however, is not the FTC's manner of production. Rather, it is the fact that Sann is incarcerated. The Court is aware of and understands the limitations and consequences that prison places on self-represented litigants, particularly when it comes to discovery. However, Sann's difficulties are self-imposed. As noted in the FTC's brief, Sann pled guilty to wire fraud and money laundering knowing full well that this case would be litigated while he was in prison. Further, Sann alone made the decision to file for bankruptcy, which lead to his inability to retain counsel because his assets became part of the bankruptcy estate. The discovery issues in this case are not the result of the FTC's actions and the Court finds that it has complied with Rule 34 to the extent it can. Accordingly, the Court will deny Sann's motion as it pertain to his request to produce the discovery in paper form.

## ii. Interrogatories

Sann's motion also challenges the sufficiency of the FTC's response to his interrogatories. In its response, the FTC objected to several of Sann's requests for production as "overbroad, unduly burdensome and improper." (Doc. 258-1 at 7.) Primarily,[7] the FTC argues that Sann's requests are so-called "blockbuster" contention interrogatories which seek "all facts supporting, negating, or otherwise relating to" the vast majority of the FTC's substantive allegations in its Complaint. Basically, the FTC argues that Sann's interrogatories abuse the discovery process because they require the FTC "to provide the equivalent of a narrative account of its entire case, including every evidentiary fact tending to prove or disprove its allegations, details of testimony of supporting witnesses, and the contents of supporting documents . . . ." (Doc. 260 at 21.)

Sann, in response, argues that his interrogatories are appropriate under the discovery rules because they merely ask for the FTC's opinion or contention regarding application of the facts to the case. In support, Sann cites to various

---

[7] The FTC also argues that the Court should deny Sann's motion to compel because his First Set of Interrogatories exceeds the number of written interrogatories authorized under Rule 32. The FTC contends that each of Sann's individual interrogatories contain requests which concern multiple subjects. As such, each interrogatory is actually multiple interrogatories and, after calculation, amounts to more than 70 discrete subparts. Because, as discussed below, the Court will deny Sann's motion based upon the FTC's "blockbuster" argument, it declines to address this argument.

17

cases which have allowed contention interrogatories, such as *Wagner v. St. Paul Fire & Marine Ins. Co.*, 238 F.R.D. 418 (N.D.W. Va. 2006).

Upon review of *Wagner*, the Court agrees that it allowed a contention interrogatory. However, contrary to Sann's argument, *Wagner* only allowed a single contention interrogatory and significantly narrowed the interrogatory's scope. *See Wagner*, 238 F.R.D. at 426. Here, in contrast, Sann seeks at least 12 contention interrogatories, each, arguably, with multiple distinct sub-parts. In fact, upon close review, these 12 interrogatories generally track the substantive allegations against Sann and the Corporate Defendants in the FTC's Complaint. (*See* Doc. 258-2 at 3–15 (seeking "all facts supporting, negating, or otherwise relating to" allegations in 12 paragraphs in the FTC's Complaint out of a total of 42, notwithstanding the fact that many paragraphs in the Complaint are factual in nature).) This case is thus distinguishable from *Wagner*. Instead, the Court finds that Sann's requests are more like the requests for production in *Aldapa v. Fowler Packing Co. Inc.*, 310 F.R.D. 583, 591 (E.D. Cal. 2015).

There, the plaintiff in the case sought "all documents related to any of the allegations in the complaint." *Aldapa*, F.R.D. at 591. The district court determined that this request was overly burdensome and found that "[c]ontention interrogatories should not require a party to provide the equivalent of a narrative

18

account of its case, including every evidentiary fact, details of testimony of supporting witnesses, and the contents of supporting documents." *Id.* (quoting *Lucero v. Valdez*, 240 F.R.D. 591, 594 (D.N.M. 2007)). Here, Sann is not, strictly speaking, seeking "each and every fact" supporting the FTC's allegations. However, his requests seek the vast majority of the facts supporting the FTC's Complaint and it would be overly burdensome for the FTC to respond. Sann's motion to compel is denied.

## II. Sann's Scheduling Motions

As mentioned, Sann moves for several modifications to the Court's Scheduling Order, dated November 12, 2015 (Doc. 193.) Primarily, Sann requests that the Court: (1) reset the discovery and motions deadlines until after he has been released from Taft CI; and (2) reset the final pretrial conference and trial date for six months after he has been released. In addition to requests to modify the Scheduling Order, Sann also moves to extend the time to respond to various motions currently pending before the Court. The Court will address these requests in reverse order.

### A. Extension to File Responses

Sann seeks an extension to file responsive briefs to various pending motions, such as: (1) the reply to the FTC's brief in opposition to his motion for

summary judgment (Doc. 232); (2) the response brief to the FTC's cross-motion for summary judgment (Doc. 236); (3) the response brief to the FTC's motion for sanctions (Doc. 240); (4) the response brief to the FTC's motion in *limine* (Doc. 252); and (5) the response brief to the FTC's motion for summary judgment (Doc. 245).

Sann "filed" his motion for extensions on December 5, 2016.[8] However, many of these extensions are overdue. The deadlines for the responses were: (1) November 7, 2016, for the reply to the FTC's brief in opposition to Sann's motion for summary judgment; (2) November 14, 2016, for the response brief to the FTC's cross-motion for summary judgment; (3) November 21, 2016, for the response brief to the FTC's motion for sanctions; (4) December 6, 2017, for the response brief to the FTC's motion in *limine*; and (5) December 9, 2017, for the response brief to the FTC's motion for summary judgment.[9]

Upon review of these deadlines, the Court finds that the extensions for the responses to the cross-motions for summary judgment (Sann's "common carrier"

---

[8] Though the Court received Sann's motion on December 9, 2016, under the "prison mailbox rule," the motion is deemed filed at the time it is given to a prison official to be mailed. *See Houston v. Lack*, 487 U.S. 266 (1988).

[9] Under this District's Local Rules, "[r]esponses to motions . . . for summary judgment must be filed within 21 days after the motion was filed. Responses to all other motions must be filed within 14 days after the motion was filed." L.R. 7.1(d)(1)(B). Reply briefs may be filed "within 14 days after the response was filed." L.R. 7.1(d)(1)(C).

claim (Docs. 232; 236)) are untimely. Further, as mentioned above, the Court considers those motions fully briefed and will rule on them separately from this Order. The Court will thus deny Sann's motion as it pertains to these motions. Likewise, the request for extension to respond to the FTC's motion for sanctions (Doc. 240) is also untimely. However, as ruled on above, the Court will deny the motion for sanctions without prejudice. As such, Sann's request is now moot and the Court will deny it as such.

This leaves the response brief to the FTC's motion in *limine* and the motion for summary judgment (Docs. 245; 252). Sann requested an extension for these motions before the response briefs were due and thus his request was timely. However, Sann's requested extension is open ended and not fixed in time. Sann asks that he be able to file the responsive briefs for these motions at some time after he has been released from prison. Nevertheless, because Sann's request was timely, and because the FTC's motion for summary judgment is dispositive to this case, the Court will allow Sann to file his responsive briefs only as to these motions. However, the Court will set a defined date for these responses and will order Sann to mail these briefs on or before March 3, 2017. At that time, the Court will then set a hearing to address the motions. As discussed below, this will affect the trial date in this matter.

21

### B. Motion to Modify the Scheduling Order

Finally, Sann moves to modify the Court's current Scheduling Order (Doc. 193) and reset the discovery and motions deadlines, as well as the date for the final pretrial conference and trial. Pursuant to Rule 16, Sann requests that the discovery and motions deadlines be extended until he has been released from prison in order for him to conduct additional discovery and file any resulting motions. The discovery and motions deadlines were November 10, 2016, and December 9, 2016, respectively. Sann signed his motion on November 25, 2016, and it was received by the Court on December 5, 2016.

In his motion, Sann complains that, due to his incarceration and pro se status, he has not had the resources nor opportunities to adequately conduct discovery and research the issues raised in this case. Citing a lack of fundamental fairness, Sann argues that discovery should be reopened once he has been released from prison and, consequently, he should then be allowed to file additional motions once discovery has been completed. As a result of these requested modifications to the Scheduling Order, Sann argues that the trial and final pretrial conference should then be rescheduled to a time following this extended discovery and motions period. The FTC objects to all modifications of the current Scheduling Order.

Federal Rule of Civil Procedure 16 states that a court's scheduling order "may be modified only for good cause and with the judge's consent." Fed. R. Civ. P. 16(b)(4). Sann argues that good cause exists by virtue of his incarceration. The Court disagrees for three reasons.

First, the Court was aware of Sann's incarceration and specifically set an usually long period for discovery and the filing of motions to accommodate this. Thus the circumstances that Sann complains about, i.e., his incarceration, existed at the time the Scheduling Order was issued and were foreseen and addressed by the Court. Second, the Scheduling Order clearly mandates that no continuances of the motions deadline or trial date will "be granted absent compelling reasons . . . ." (Doc. 193 at 3.) The Court does not view Sann's incarceration to be a compelling reason. If it did, then every pro se prisoner who is currently involved with civil litigation in this Court could delay their trial, as well as other critical deadlines, until they were released from prison. This approach would fundamentally disrupt the Court's business. Lastly, Sann knew about these deadlines in early November of 2015. However, instead of promptly alerting the Court that he would require more time for discovery and to file motions, Sann remained silent for more than a year. The Court declines to now reward Sann for his lack of diligence and will deny the motion as it pertains to his request to modify the discovery and motions

deadlines.[10]

Nevertheless, because the Court has concluded that Sann should be given an opportunity to address and argue the FTC's dispositive motion for summary judgment, the Court is forced to vacate the final pretrial conference and trial scheduled for March 20, 2017. Upon resolution of the FTC's motion for summary judgment, the Court will then reset these events, if needed. Consequently, the Court will grant Sann's motion in part and vacate the final pretrial conference and trial for the sole purpose of resolving the FTC's motion for summary judgment.

Accordingly, IT IS ORDERED that:

(1) Plaintiff FTC's Motion for Sanctions and to Compel (Doc. 240) is GRANTED IN PART and DENIED IN PART in accordance with the above Order;

(2) Defendant Steven V. Sann's Motion for Protective Order (Doc. 242) is DENIED;

(3) Sann's Motion to Compel Discovery Responses (Doc. 257) is DENIED;

(4) Sann's Motion to Extend the Time to Respond to Motions and to Set Briefing Schedule (Doc. 259) is GRANTED IN PART and DENIED IN PART in

---

[10] As discussed above, the Court will keep discovery open strictly to allow Sann and the Corporate Defendants to appear for their depositions and to allow Lane to produce the AppRiver emails.

24

accordance with the above Order; and

(5) Sann's Motion to Amend or Modify the Pre-Trial Conference
Scheduling Order (Doc. 256) is GRANTED IN PART and DENIED IN PART in
accordance with the above Order. The Final Pretrial Conference and Trial set for
March 20, 2017, are VACATED and will be reset following the resolution of the
FTC's Motion for Summary Judgment

DATED this **3ʳᵈ** day of February, 2017.

Dana L. Christensen, Chief Judge
United States District Court