IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
MISSOULA DIVISION

| | |
|---|---|
| FEDERAL TRADE COMMISSION, <br><br> Plaintiff, <br><br> vs. <br><br> AMERICAN EVOICE, LTD., EMERICA MEDIA CORPORATION, FONERIGHT, INC., GLOBAL VOICE MAIL, LTD., HEARYOU2, INC., NETWORK ASSURANCE, INC., SECURATDAT, INC., TECHMAX SOLUTIONS, INC., VOICE MAIL PROFESSIONALS, INC., STEVE V. SANN, TERRY D. LANE, a/k/a TERRY D. SANN, NATHAN M. SANN, ROBERT M. BRAACH, <br><br> Defendants. <br><br> and <br><br> BIBLIOLOGIC, LTD., <br><br> Relief Defendant. | CV 13–03–M–DLC <br><br> ORDER |

Defendant Steven V. Sann ("Sann") and Plaintiff Federal Trade Commission ("FTC") have filed cross-motions for summary judgment on the issue

1

of the corporate Defendants' status as "common carriers."[1] (Docs. 232, 236.) For the reasons explained below, the Court grants the FTC's motion and denies Sann's motion.

## FACTUAL BACKGROUND

The factual and procedural background of this case, as addressed in multiple previous orders of this Court (*See e.g.,* Docs. 196, 267), is long and complicated. For purposes of this Order, the Court will only address the facts necessary for resolving the underlying cross-motions of summary judgment. The primary issue at bar is whether corporate Defendants American eVoice, Ltd., Emerica Media Corporation, FoneRight, Inc., Global Voice Mail, Ltd., HearYou2, Inc., Network Assurance, Inc., SecuratDat, Inc., Techmax Solutions, Inc., and Voice Mail Professionals, Inc. (the "corporate Defendants"), operated as "common carriers" under federal telecommunications law. Sann contends that Defendants are common carriers and, thus, are exempt from liability under section 5, 15 U.S.C. § 45(a), of the Federal Trade Commission Act ("FTC Act").

As discussed in its Complaint, the FTC alleges that Sann, through the

---

[1] The Court notes that Sann's motion fails to comply with this District Local Rules. As the Court has cautioned Sann in Orders (e.g., Doc. 217), a "motion must state that other parties have been contacted and state whether any party objects to the motion." L.R. 7.1(a). Sann's motion fails to do so. Further, "[f]ailure to comply with this rule may result in summary denial of the motion." L.R. 7.1(d). However, because the Court is denying the motion on its merits, it declines to deny it because of Sann's failure to adhere to the Local Rules.

2

corporate Defendants, engaged in an illegal and massive telecommunication scheme which defrauded thousand of consumers out of millions of dollars. This alleged scheme, known as "cramming," caused millions of dollars in charges to appear on consumer telephone bills for telecommunication services that they neither wanted nor used. The FTC asserts that charges for these unwanted services, such as voicemail, electronic fax, and call forwarding, would be placed on consumer telephone bills by Defendants, where the charges would go unnoticed for months. The FTC state that Defendants are collectively responsible for over $70 million dollars in unauthorized charges. Defendants' actions, the FTC contends, violated section 5(a) of the FTC Act, which prohibits "unfair or deceptive acts or practices in or affecting commerce." 15 U.S.C. § 45(a)(1). In contrast, the corporate Defendants, Sann argues, are exempt from prosecution under the FTC Act by virtue of their status as "common carriers." Consequently, Sann contends that as an officer of these corporations, he cannot be held personally liable for their actions. The Court will address these arguments below.

## LEGAL STANDARD

A court shall grant summary judgment on a particular claim or defense if a "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "[W]hen

parties submit cross-motions for summary judgment, each motion must be considered on its own merits." *Fair Hous. Council of Riverside County, Inc. v. Riverside Two*, 249 F.3d 1132, 1136 (9th Cir. 2001) (citations and internal punctuation marks omitted). Under this standard, "each party, as a movant for summary judgment, bears the burden of establishing that no genuine dispute of material fact exists and that the movant is entitled to a judgment as a matter of law." 10A Charles Alan Wright et al., *Federal Practice and Procedure* § 2720, 352–353 (4th ed. 2016). If a genuine dispute of material fact exists, a court must deny both motions. *Id.* at 353–354. However, if there is no dispute of material fact and only one party is entitled to judgment as a matter of law, a court may grant summary judgment as to that party only. *Id.* at 354–355; *see also Johnson & Johnson v. Diaz*, 339 F. Supp. 60, 65 (C.D. Cal. 1971) (district court granted one party's motion for summary judgment and denied other party's motion).

## DISCUSSION

As discussed, Sann contends that the corporate Defendants in this case were common carriers pursuant to federal communications law and thus were exempt from liability under section 5(a) of the FTC Act. This provision empowers and directs the FTC "to prevent persons, partnerships, or corporations . . . from using . . . unfair or deceptive acts or practices in or affecting commerce. 15 U.S.C.

4

§ 45(a)(2). Importantly, certain entities, such as common carriers, are exempt from prosecution under this act. *Id.* This exemption was discussed in *Federal Trade Commission v. AT&T Mobility LLC*, 835 F.3d 993 (9th Cir. 2016), which Sann cites to in support of his motion.

In *AT&T Mobility LLC*, the Court of Appeals for the Ninth Circuit was tasked with determining if AT&T's status as a common carrier precluded the FTC from prosecuting the telecommunications company for non-common carrier activities. *AT&T Mobility LLC*, 835 F.3d at 1003. The Court found that "[t]he common carrier exemption in section 5 of the FTC Act carves out a group of entities based on their status as common carriers." *Id.* This carve-out even applies, the Court found, to "non-common carrier activities" as long as the entity held the status of common carrier. *Id.* However, unlike the case at bar, AT&T's status as a common carrier was not in dispute. Rather, the question before the Ninth Circuit was whether AT&T's non-common carrier activities were exempt from prosecution by virtue of AT&T's status as a common carrier. *Id.* at 997–998. Here, in contrast, the FTC vehemently contests Sann's argument that the corporate Defendants were common carriers. Thus, the issue is how to define a common carrier under federal law.

As noted in *AT&T Mobility LLC*, the FTC Act does not define "common

carriers." *Id.* at 997 (citing 15 U.S.C. § 45(a)(2)). However, both parties urge the Court to look to the Communications Act of 1934, 48 Stat. 1064 (1934), as amended by the Telecommunications Act of 1996, 110 Stat. 56 (1996), for guidance. Under the Communications Act, a common carrier is an entity that is "engaged as a common carrier for hire, in interstate or foreign communication by wire or radio or interstate or foreign radio transmission of energy . . . ." 47 U.S.C. § 153(11). However, "[d]ue to the circularity of the definition, resort must be had to court and agency pronouncements to ascertain the term's meaning." *Howard v. Am. Online Inc.*, 208 F.3d 741, 752 (9th Cir. 2000) (quoting *FCC v. Midwest Video Corp.*, 440 U.S. 689, 701 n. 10 (1979).

Sann argues that the Court should look to *United States Telecom Association v. Federal Communications Commission*, 295 F.3d 1326 (D.C. Cir. 2002), to determine if the corporate Defendants were common carriers. There, the United States Court of Appeals for the District of Columbia examined a two factor analysis previously applied by the Federal Communications Commission ("FCC") which found that "common carrier status turns on: (1) whether the carrier holds himself out to serve indifferently all potential users; and (2) whether the carrier allows customers to transmit intelligence of their own design and choosing." *U.S. Telecom Ass'n*, 295 F.3d at 1329 (citation and internal quotation marks omitted).

Applying this test, Sann asserts that the corporate Defendants satisfy this definition because the services they provided were indiscriminately available to all consumers and businesses, "regardless of race, nationality, creed, socio-economic status, age, gender or political affiliations throughout the United States, in interstate commerce." (Doc. 232 at 9.) Further, Sann maintains that the services provided by the corporate Defendants, such as voice messaging, allowed its customers to transmit information of their own design and choosing. Accordingly, Sann asserts that because the corporate Defendants' services satisfy this two pronged test, they were common carriers and exempt from liability under the FTC Act.

In addition to this two-factor analysis, Sann contends that the corporate Defendants meet the statutory definition of a common carrier as defined in the Telecommunications Act of 1996. Under this Act, a "'telecommunications carrier' means any provider of telecommunications services. . . [and] shall be treated as a common carrier under this chapter only to the extent that it is engaged in providing telecommunications services . . . ." 47 U.S.C. § 153(51). Likewise, "'telecommunications service' means the offering of telecommunications for a fee directly to the public . . . ." *Id.* at § 153(53). Finally, "telecommunications' means the transmission, between or among points specified by the user, of information of

7

the user's choosing, without change in the form or content of the information as sent and received." *Id.* at § 153(50). Applying these terms, Sann argues that because his companies offered services meeting the definition of telecommunications, they offered telecommunications services and by definition they are common carriers.

The FTC, in contrast, argues that the Court should apply a more narrow test than the one proposed by Sann. The FTC states that to determine if an entity is a common carrier, it looks to see if the entity is providing "basic transmission services" or "enhanced services." (Doc. 237 at 10.) This distinction centers on whether the entity operates as a "pipeline service." *Amend. of Sec. 64.702 of the Commission's R. and Regulations (Second Computer Inquiry)*, 84 F.C.C.2d 50, 53–54 (F.C.C. 1980) (internal quotation marks omitted). Put another way, "[a] basic transmission service is the common carrier offering of transmission capacity for the movement of information between two or more points." *Id.* at 53.

This differs from an "enhanced service," which "combines basic service with computer processing applications that act on the format, content, code, protocol or similar aspects of the subscriber's transmitted information, or provide the subscriber additional, different, or restructured information, or involve subscriber interaction with stored information." *Re Second Computer Inquiry*, 77

F.C.C.2d 384, 387 (F.C.C. 1980); *see also Second Computer Inquiry*, 84 F.C.C.2d at 53–54 ("[A] basic service is the offering of a 'transmission pipeline' in contrast to the myriad services that are dependent upon, but different in kind, from the pipeline service."). Thus, the key point in determining if an entity is a common carrier is whether the entity operates a pipeline transmission service, or whether it provides services that rely upon the pipeline service for their operation.

Under this test, the FTC argues that there is no evidence that corporate Defendants operated a transmission pipeline. Further, the FTC asserts, the services provided by the corporate Defendants, i.e., voice mail, electronic fax, and call forwarding, rely upon the pipeline transmission services of common carriers and, thus, are considered to be enhanced services under the Communications Act. *See e.g. In the Matter of Computer III Further Remand Proceedings*, 14 F.C.C. Rcd. 4289, 4294 n. 11 (F.C.C. 1999) ("Examples of enhanced services include, among other things, voice mail, electronic mail, electronic store-and-forward, facsimile store-and-forward, data processing, and gateways to online databases."). This difference was examined by the Court of Appeals for the Ninth Circuit in *Howard v. American Online Inc.*

The Court applied the "basic service" and "enhanced services" distinction to determine that American Online Inc. ("AOL"), an internet (or information)

service provider, was not a common carrier under the Communications Act. *Howard*, 208 F.3d at 753. Deferring to the FCC's interpretation of the Act, the Court found that the services provided by AOL, such as email and online "chat rooms," were enhanced services because they utilized transmission lines to function, as opposed to acting as a pipeline for the transfer of information. *See id.* ("This conclusion is reasonable because e-mail fits the definition of an enhanced service–the message is stored by AOL and is accessed by subscribers; AOL does not act as a mere conduit for information."). Because there was no evidence provided by the plaintiffs that AOL offered basic services, the Court found that AOL was not a common carrier. *Id.*

Here, likewise, the Court is persuaded by the FTC's interpretation of "common carrier" and finds it reasonable. *See Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 844 (1984) (courts should defer to administrative interpretation of statute and accord considerable weight to "executive department's construction of a statutory scheme it is entrusted to administer"). First, there is no evidence before the Court that the corporate Defendants operated a transmission pipeline. Further, as discussed, the services provided by the corporate Defendants have all been interpreted to be enhanced services under the Communications Act. *See In the Matter of Computer III*

*Further Remand Proceedings*, 14 F.C.C. Rcd. at 4294 n. 11. The Court agrees and finds that the services offered by the corporate Defendants, i.e., voice mail, electronic fax, and call forwarding, all rely on the transmission services of other entities, such as Verizon. (Doc. 238 at 11.) Because the corporate Defendants only offered services that could be considered enhanced services, and because they did not provide basic services, the Court finds that they are not common carriers under federal law.

Finally, the Court is also persuaded that the corporate Defendants are not common carriers by the fact that they never registered as such with the FCC. As noted by the FTC, common carriers must register with the FCC by filing a Form 499-A with the commission. 47 C.F.R. § 64.1195(a). In addition, common carriers must designate, in writing, an agent in the District of Columbia to facilitate service of process. 47 U.S.C. § 413. Lastly, most common carriers are required to contribute to "universal service support mechanisms," such as the Telecommunications Relay Services Fund, among others, to support telephone service to various populations. *See* 47 C.F.R. § 54.706(c); 64.604(c)(5)(iii); 47 U.S.C. § 254. There is no evidence before the Court that the corporate Defendants have complied with these requirements or are otherwise exempt from their application. Similarly, there is also no evidence before the Court that the

corporate Defendants ever held themselves out as common carriers to any regulatory body or the public. These undisputed facts thus successfully undermine any argument that the corporate Defendants acted as common carriers during the time alleged in the Complaint.

In conclusion, the Court finds that the corporate Defendants are not common carriers under the FTC act and will deny Sann's Motion for summary judgment. Likewise, the Court will grant the FTC's cross-motion for summary judgment to the extent it requests that this Court find that the corporate Defendants are not common carriers under the FTC Act.

Accordingly, IT IS ORDERED that:

(1) Defendant Steven V. Sann's Motion for Summary Judgment (Doc. 232) is DENIED; and

(2) Plaintiff the FTC's Motion for Summary Judgment (Doc. 236) is GRANTED in accordance with the above-Order

DATED this 14th day of March, 2017.

Dana L. Christensen, Chief Judge
United States District Court